ACCEPTED
03-14-00560-CR
5974935
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/8/2015 10:32:58 AM
JEFFREY D. KYLE
CLERK

# No. 03-14-00560-CR

In the Third Court of Appeals
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/8/2015 10:32:58 AM
~~JEFFREY D. KYLE~~
Clerk

# CHRISTOPHER NEWBERRY,

*Appellant,*

## v.

# THE STATE OF TEXAS,

*Appellee.*

On appeal from the County Court-at-Law Number Five,
Travis County, Texas
Trial Cause No. C-1-CR-14-209349

# STATE'S BRIEF

DAVID A. ESCAMILLA
TRAVIS COUNTY ATTORNEY

GISELLE HORTON
ASSISTANT TRAVIS COUNTY ATTORNEY
State Bar Number 10018000
Post Office Box 1748
Austin, Texas 78767
Telephone: (512)854-9415
TCAppellate@traviscountytx.gov

*July 8, 2015*

ATTORNEYS FOR THE STATE OF TEXAS

ORAL ARGUMENT IS NOT REQUESTED

# TABLE OF CONTENTS

INDEX OF AUTHORITIES .......................................... iii

STATEMENT OF THE CASE ......................................... 1

ISSUES PRESENTED ............................................. 1

BACKGROUND ................................................. 2

SUMMARY OF THE ARGUMENT ..................................... 4

ARGUMENT

*Reply Point One*: The evidence is legally sufficient to sustain the
judgment of conviction for driving while intoxicated. .............. 5

1.    Newberry's contentions ............................... 5

2.    The standard of review .............................. 6

3.    The evidence is legally sufficient to show that
      Newberry drove while intoxicated. ..................... 7

*Reply Point Two*: If the point is preserved, the trial court did
not abuse its discretion in overruling Newberry's mistrial motion. . 8

1.    Relevant facts ..................................... 8

2.    Newberry's contentions ............................. 12

i

3.     General mistrial principles and the standard of review ..... 12

4.     Newberry has forfeited appellate review .................. 14

5.     The judgment is not subject to revision because a simple objection or an instruction to disregard could have prevented or cured the problem. ................................ 15

PRAYER .......................................................... 18

CERTIFICATE OF COMPLIANCE ...................................... 19

CERTIFICATE OF SERVICE ......................................... 19

ii

## INDEX OF AUTHORITIES

**Rule**                                                                    **Page**

TEX. R. APP. P. 33.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Cases**

*Bledsoe v. State*, 21 S.W.3d 615
(Tex. App.—Tyler 2000, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Griggs v. State*, 213 S.W.3d 923
(Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Jackson v. Virginia*, 443 U.S. 307
(1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Kuciemba v. State*, 310 S.W.3d 460
(Tex. Crim. App. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ladd v. State*, 129 S.W.3d 126
(Tex. Crim. App. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Merritt v. State*, 368 S.W.3d 516
(Tex. Crim. App. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Murray v. State*, 457 S.W.3d 446
(Tex. Crim. App. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ocon v. State*, 284 S.W.3d 880
(Tex. Crim. App. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Ovalle v. State*, 13 S.W.3d 774
(Tex. Crim. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Pierce v. State*, 234 S.W.3d 265
(Tex. App.—Waco 2007, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sharper v. State*, 22 S.W.3d 557
(Tex. App.—Texarkana 2000, no pet.) . . . . . . . . . . . . . . . . . . . . . . . 16

*Sierra v. State*, 280 S.W.3d 250
(Tex. Crim. App. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Simpson v. State*, 119 S.W.3d 262
(Tex. Crim. App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Wead v. State*, 129 S.W.3d 126
 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
*Wood v. State*, 18 S.W.3d 642
 (Tex. Crim. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
*Young v. State*, 137 S.W.3d 65
 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

## STATEMENT OF THE CASE

Newberry was charged by information with the Class B misdemeanor of driving while intoxicated (DWI), alleged to have been committed June 9, 2014. CR 5–6, 8. A jury found him guilty of the offense on August 6, 2014. CR 36.

On August 7, 2014, the trial court assessed punishment and sentenced Newberry to 120 days' confinement in the Travis County Jail. CR 39. Newberry gave written notice of appeal on August 28, 2014. CR 51, 52 [amended notice of appeal].

## ISSUES PRESENTED

*Issue One*: If the Court ignores (1) the eyewitness's identification of Newberry as the driver in a nearby collision, and (2) Newberry's on-the-scene admission to driving, is the evidence legally sufficient to sustain the judgment for driving while intoxicated?

*Issue Two*: Newberry testified that he was intoxicated when the police found him, but that his co-worker had driven, not he. Intending to impeach his credibility with a felony conviction, the prosecutor began by

1

asking Newberry on cross-examination whether he was currently in jail (he was) and whether he was incarcerated on a parole hold (he was not). Newberry never objected or asked for a curative instruction. Instead, he moved for a mistrial some time later. Was the trial court's denial of this mistrial motion reversible error?

## BACKGROUND

Police received a suspicious-person call about a Jeep parked on the sidewalk in front of the Summit assisted-living facility on Mesa Drive, in Austin. 3 RR 23; 5 RR State's Exhibits #3, 4 & 6 [photos], State's Exhibit #5 [third 9-1-1 call]. The Jeep's driver was reportedly "out stumbling around." 5 RR State's Exhibit #5 @ 8:30, 8:50. When police got there about twenty minutes later, they found a Jeep parked halfway on the sidewalk. Inside was a man asleep in the driver's seat, covered in sweat and drooling, with the Jeep's keys in his lap. 3 RR 26. This was Newberry. 3 RR 79.

After the police woke him up, Newberry "wasn't all there." 3 RR 27. His speech was unintelligible. "It kind of came and went." His balance was poor. 3 RR 27. Police saw two open beers in the Jeep: one in the center

2

console, and another "in the rear portion of the center console, possibly on the back floor." 3 RR 30. They also found three unopened beer cans in a cooler. 3 RR 30; 5 RR State's Exhibit #7 [photograph]; 5 RR State's Exhibit #8 @ 18:45:10 [videotape]. Newberry smelled of alcohol but denied drinking. 3 RR 38. He had watery, glassy eyes and very restricted pupils. 3 RR 38, 73. He told the officers that he had been driving, "heading into Austin." 3 RR 77.

Police began to suspect that this Jeep might have been the same one that—according to two independent 9-1-1 callers' reports almost an hour and a half earlier—had been driving "crazy" erratically and had collided with a guardrail on FM 2222. Both callers reported that the Jeep had turned off of 2222 and onto Mesa Drive; one caller related that the Jeep had turned into the Summit assisted-living facility. 3 RR 28; 5 RR State's Exhibit #5. One of these eyewitness/callers came to the scene and identified Newberry as the driver who hit the guardrail. 3 RR 28. Consistent with the collision reports, the Jeep's bumper had sustained a big dent. 5 RR State's Exhibit #6.

Field sobriety testing showed that Newberry was intoxicated. 3 RR 53. After arrest, Newberry at first agreed to give a breath specimen for testing purposes at the jail, but later refused. 3 RR 55, 60.

## SUMMARY OF THE ARGUMENT

*Summary of Reply Point One*: Newberry has failed to view the evidence as the standard of review requires. Two concerned eyewitnesses called police to report an extremely erratic driver who had been swerving all over the road and hitting the curb on FM 2222; the driver then collided with a guardrail.

About an hour and a half later, police responded to a suspicious-person call and found a Jeep parked on the curb. The driver was asleep at the wheel, with keys in his lap and beer in his car. He smelled of alcohol, and showed typical signs of intoxication. He told police he had been driving. One of these 9-1-1 callers came to the scene and identified Newberry as the driver who had collided with the guardrail. Viewing this evidence in the light most favorable to the verdict, any rational trier could have found that Newberry drove while intoxicated.

4

*Summary of Reply Point Two*: Because defense counsel withdrew the mistrial motion relating to the "parole hold," only the mistrial motion relating to Newberry's incarceration is at issue. Newberry forfeited his appellate complaint, because his mistrial motion was untimely.

Furthermore, appellate courts will not reverse when lesser remedies such as an objection or an instruction could have cured the error. The complained-of testimony easily could have been prevented by timely objection. And an instruction to disregard could have "cured" it because the incarceration question and response does not fall within the narrow class of highly prejudicial errors for which mistrials are reserved. The trial court therefore did not abuse its discretion in refusing to declare a mistrial.

## ARGUMENT

*Reply Point One*: **The evidence is legally sufficient to sustain the judgment of conviction for driving while intoxicated.**

**1.    Newberry's contentions.**

In his first point, Newberry contends that the evidence of driving while intoxicated is insufficient once the Court ignores two key items of

evidence: (1) an officer's testimony that a 9-1-1 caller identified Newberry as the driver who collided with the guardrail, and (2) Newberry's admission at the scene that he had been driving. Newberry's Brief, pp. 25, 28–33. Alternatively, Newberry contends that, even if the evidence showed him driving, the State established no temporal link between that driving and his intoxication at the scene. Newberry's Brief, p. 38.

These contentions misapply the standard of review.

## 2. The standard of review.

A legal-sufficiency challenge asks whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). The reviewing court presumes that the jury resolved all conflicts in favor of the verdict and defers to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012) ("The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses").

6

### 3. The evidence is legally sufficient to show that Newberry drove while intoxicated.

Two 9-1-1 callers saw Newberry crash into a guardrail after repeatedly swerving and hitting the curb. 5 RR State's Exhibit #5. The callers stated that the Jeep's driver was "wasted," that he "must be super drunk," and that he was " going to kill somebody." 5 RR State's Exhibit #5 @ 1:15, 3:50. One of the 9-1-1 callers identified him at the scene as the driver in the collision. 3 RR 24–28, 101; 5 RR State's Exhibit #8 @ 18:19:30 [DVD]. The police found a big dent in the Jeep's bumper, which was consistent with a collision with the guardrail. 3 RR 32–33; 5 RR State's Exhibit #6. The collision with the guardrail shows driving while intoxicated. *See Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010); *Sierra v. State*, 280 S.W.3d 250, 256 (Tex. Crim. App. 2009); *Thompson v. State*, No. 03-11-00255-CR, 2012 Tex. App. LEXIS 6714, at *22–23 (Tex. App.—Austin Aug. 8, 2012, no pet.) (mem. op., not designated for publication) (evidence that defendant did not have normal use of mental or physical faculties included circumstances of collision and reckless driving observed by witnesses).

The manner and place of the Jeep's coming to rest—tires up on the curb, in front of the assisted-living facility—show that Newberry drove while intoxicated. The fact that he stumbled around outside the assisted-living facility, then fell asleep behind the wheel, keys in his lap, also show driving while intoxicated. The highly intoxicated Newberry admitted to police that he had been driving. From this any rational trier could have found beyond a reasonable doubt that Newberry drove while intoxicated.

> *Reply Point Two*: **If the point is preserved, the trial court did not abuse its discretion in overruling Newberry's mistrial motion.**

## 1. Relevant facts.

Newberry took the stand at trial, admitted drinking, but denied driving. He testified that his illegal alien co-worker, Juan, was the driver. Juan, he related, stopped in front of the assisted-living facility because he knew someone there. The drunk stumbling about who was reported in the suspicious-person call was Juan, not Newberry. Newberry moved over to the driver's seat to roll down a difficult window, then fell asleep; Juan was

gone when he woke up. The dent on the Jeep's bumper happened long ago. 3 RR 73–83.

Intending to attack the credibility of this testimony, the prosecutor led off his cross-examination by asking Newberry if he had been in jail since this arrest.

| | |
|---|---|
| PROSECUTOR: | [L]et's talk about what happened since this arrest. Since this arrest, you've been in jail haven't you? |
| NEWBERRY: | Yes, sir. |
| PROSECUTOR: | Okay, and that's been on a parole hold, correct? |
| NEWBERRY: | That's been for this. |
| DEFENSE COUNSEL: | Your Honor– |
| THE COURT: | Please approach. |

3 RR 86.

It was only after some discussion at the bench that defense counsel moved for a mistrial because of the incarceration question. 3 RR 89. The trial court did not rule on the motion immediately, but wanted to consider

9

further testimony. 3 RR 90. On voir dire examination, Newberry testified that he is currently on parole for two felonies—bribery and burglary—and that a DWI conviction could jeopardize his parole status. 3 RR 91–92. At the conclusion of this brief voir dire examination, the trial court told the prosecutor,

> You can only impeach him with the actual felony conviction for bribery, which is a crime of moral turpitude. So I can allow the testimony that he has been convicted of bribery, but the whole line of questioning about him being on parole, and that being some sort of motivation to lie, I don't think you can—I'm not going to allow that.

3 RR 92. Defense counsel then moved for a mistrial on grounds that the jury had heard that Newberry was on parole. 3 RR 93.

As soon as the court denied the motions, defense counsel retracted her mistrial motion regarding the "parole hold," telling the trial court: "If you're going to . . . say the bribery is allowable, then . . . the fact that he's not been revoked from parole and he's been successful for three years out in the world, I think is relevant." 3 RR 95. The trial court ascertained that counsel had withdrawn the "parole" mistrial motion and now was

10

concerned only with the first question and answer about Newberry's incarceration. 3 RR 95. Defense counsel proposed to explain to the jury why Newberry was currently in jail, by putting on testimony about the nature of parole "and how, by virtue of this very charge, that's what's holding him." 3 RR 95–96. The trial court did not "want to go down that road" because it was time-consuming and irrelevant. 3 RR 96, 97–98. After a brief recess, the judge told the parties she was denying the mistrial motion, and would instruct the jury to disregard the testimony about Newberry's current incarceration. 3 RR 97.

When the jurors came back in, the judge instructed them to "disregard the last question and response," 3 RR 99, about whether Newberry was being held in jail on a parole violation. Defense counsel never objected to any of the complained-of questioning, never requested any sort of instruction to disregard, and did not point out that the instruction given was not what the trial court had intended.

When the prosecutor resumed his cross-examination, he established Newberry's felony conviction for bribery. 3 RR 99–100.

## 2. Newberry's contentions.

Newberry's second point contends that the trial court erred reversibly when it denied his mistrial motion after the prosecution improperly elicited that he was in jail and on parole at the time of trial. Newberry's Brief, pp. 40, 49. He asserts that the complained-of testimony violated his rights and operated to deny him a fair trial. Newberry's Brief, pp. 49–51. Newberry likens his case to that of a defendant involuntarily dressed in jail attire during trial. Newberry's Brief, p. 50.

## 3. General mistrial principles and the standard of review.

Declaring a mistrial is appropriate only for "highly prejudicial and incurable errors." *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). Only in extreme circumstances, where the prejudice is incurable—when error is so prejudicial that expenditure of further time and expense would be wasteful and futile—should proceedings be halted and a mistrial declared. *Ladd v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 1999). Whether the error rises to this level must be determined on the case's particular facts. *Id.*

12

Denial of a mistrial motion is reviewed under the abuse of discretion standard. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004); *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). An appellate court reviews the evidence in the light most favorable to the trial court's ruling and considers only those arguments before the trial court at the time of the ruling. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *Wead*, 129 S.W.3d at 129.

Newberry did not object or ask for a curative instruction before moving for a mistrial. When a party's first action is to move for mistrial, appellate review is limited to asking whether the trial court erred in not taking the most serious action of ending the trial. If an event could have been prevented by timely objection or cured by a jury instruction to disregard, but the appellant did not request these lesser remedies, the appellate court will not reverse. *Ocon*, 284 S.W.3d at 885; *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004); *see also Rice v. State*, No. 03-07-00446-CR, 2009 Tex. App. LEXIS 2062, at *16 (Tex. App.—Austin March 26, 2009, no pet.) (mem. op., not designated for publication).

13

## 4. Newberry has forfeited appellate review.

Defense counsel withdrew her mistrial motion as to the question and response about Newberry's parole hold. 3 RR 95. Thus, only the mistrial-worthiness of the incarceration question and response is properly before the Court.

The potential for error became apparent as soon as the prosecutor asked Newberry, "Since this arrest, you've been in jail, haven't you?" 3 RR 86. Surely defense counsel knew the answer to this question. An objection therefore would have prevented the prejudicial event's occurrence.

But counsel did nothing until well after the trial court on its own initiative called the parties to the bench and discussed the matter. If a party delays his mistrial motion, and by failing to object allows for the introduction of further objectionable testimony and greater accumulation of harm, the party may no more rely on the untimely mistrial motion than on an untimely objection. *Young*, 137 S.W.3d at 70. Because the mistrial motion was untimely, Newberry's second point is unpreserved for

14

appellate review. TEX. R. APP. P. 33.1(a); *Griggs v. State*, 213 S.W.3d 923, 927

(Tex. Crim. App. 2007); *Young*, 137 S.W.3d at 70.

**5.  The judgment is not subject to revision because a simple objection or an instruction to disregard could have prevented or cured the problem.**

When the movant does not first request a lesser remedy, the court of

appeals will not reverse the judgment if the problem could have been

cured by the less drastic alternative. *Ocon*, 284 S.W.3d at 885.

As discussed earlier, a simple objection would have obviated the

problem altogether. Furthermore, any prejudice could have been cured by

an instruction to disregard.

Asking an improper question will seldom call for a mistrial. *Ladd*, 3

S.W.3d at 567. And, ordinarily, a prompt instruction to disregard will cure

the error associated with an improper question and response. *Ovalle v.

State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); *see also Simpson*, 119

S.W.3d at 272. A trial court does not abuse its discretion if, at the time of

the motion, the improper question's effect could have been cured by jury

instruction. *Ocon*, 284 S.W.3d at 886–87; *Young*, 137 S.W.3d at 70.

15

A question revealing that a defendant is in jail at the time of trial is often improper, but courts have consistently held that it is not incurably prejudicial. *See Pierce v. State*, 234 S.W.3d 265, 268 (Tex. App.—Waco 2007, pet. ref'd) (instruction by the trial court cured any prejudice caused by witness testimony exposing defendant's incarceration); *see also Bledsoe v. State*, 21 S.W.3d 615, 624 (Tex. App.—Tyler 2000, no pet.); *Sharper v. State*, 22 S.W.3d 557, 559 (Tex. App.—Texarkana 2000, no pet.).

In *Sharper*, the State asked a witness if he was with Sharper in "hold-over the past two or three days." 22 S.W.3d at 558. The witness confirmed that Sharper was in jail at the time of trial. *Id.* After acknowledging that the prosecutor's question was improper, the court instructed the jury to disregard the testimony, and denied Sharper's motion for mistrial. *Id.*

Distinguishing the case from one in which the defendant appeared before the jury in jail attire, the *Sharper* Court affirmed, holding that the error was cured by the instruction to disregard. *Sharper*, 22 S.W.3d at 559. "The matter was raised one time, and it does not appear that it was emphasized or even repeated at any other point in the proceeding." *Id.*

16

Moreover, the brief statement that Newberry was incarcerated does not equate to the "recurring impression created when a defendant appears throughout trial in handcuffs, shackles or jail clothing." *Hamilton v. State*, No. 14-08-00175-CR, 2010 Tex. App. LEXIS 480, at *7 (Tex. App.—Houston [14th Dist.] Jan. 28, 2010, no pet.) (mem. op., not designated for publication); *see also Butler v. State*, No. 14-11-01001-CR, 2012 Tex. App. LEXIS 8132 at *6–7 (Tex. App.—Houston [14th Dist.] September 27, 2012, no pet.) (mem. op., not designated for publication).

As in *Sharper*, the improper questioning was not of such a character that a curative instruction would have been ineffective in removing any prejudice. Indeed, defense counsel could not have believed the error to have been incurably prejudicial when she herself proposed to adduce testimony educating the jury about Newberry's sentence on the bribery conviction, involving prison and release on parole. 3 RR 96. Thus, the denial of Newberry's mistrial motion was within the zone of reasonable disagreement, and the trial court did not abuse its discretion in failing to take the extreme action of ending the trial.

17

## PRAYER

For these reasons, the Travis County Attorney asks this Court to overrule Newberry's points of error and affirm the judgment of conviction for driving while intoxicated.

Respectfully submitted,

DAVID A. ESCAMILLA
TRAVIS COUNTY ATTORNEY

Giselle Horton
Assistant Travis County Attorney
State Bar Number 10018000
Post Office Box 1748
Austin, Texas 78767
Telephone: (512)854-9415
TCAppellate@traviscountytx.gov

ATTORNEYS FOR THE STATE OF TEXAS

## CERTIFICATE OF COMPLIANCE

Relying on Corel WordPerfect's word-count function, I certify that this document complies with the word-count limitations of TEX. R. APP. P. 9.4. The document contains 3687 words.

_____
Giselle Horton

## CERTIFICATE OF SERVICE

I certify that I have sent a complete and legible copy of this State's brief via electronic transmission, to Mr. Newberry's attorney, Mr. Christopher Morgan, at chrismorganlaw@cs.com, on or before July 8, 2015.

_____
Giselle Horton
Assistant Travis County Attorney