

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-21-00050-CR

JASON DEAN CRAVEY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 47888-B

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

## MEMORANDUM OPINION

A Gregg County jury found Jason Dean Cravey guilty of continuous dating violence, a third-degree felony. *See* TEX. PENAL CODE ANN. § 25.11(e) (Supp.). After a punishment trial to the bench, the trial court sentenced Cravey to eight years' imprisonment and ordered him to pay a $500.00 fine and court costs but suspended the sentence in favor of placing Cravey on community supervision for eight years.

On appeal, Cravey argues that (1) a portion of the statute of offense violated the constitutional and statutory requirements of a unanimous jury verdict in felony cases, (2) he was entitled to the lesser-included-offense instruction of assault family violence, (3) his motion for mistrial based on the victim's testimony of Cravey's drug use should have been granted, (4) the trial court erred by limiting cross-examination of the victim's prior history of violent conduct, and (5) several fees were improperly assessed.

We find that Cravey failed to preserve his first issue for our review. We also find that Cravey was not entitled to a lesser-included-offense instruction, the trial court did not abuse its discretion by overruling Cravey's motion for a mistrial, Cravey's complaint about the limitation of his cross-examination of the victim does not comport with the argument that he made at trial, and the Crime Stoppers fee was properly assessed. However, because we agree that the sheriff fees must be reduced and the time payment fee eliminated, we modify the trial court's judgment and bill of costs to reflect sheriff fees of $75.00 and by deleting the time payment fee. As modified, we affirm the trial court's judgment.

## I.     Cravey Failed to Preserve His First Point of Error

The relevant portions of Section 25.11(a) provide that a person commits continuous violence against the family "if, during a period that is 12 months or less in duration, the person two or more times engages in conduct that constitutes" intentional, knowing, or reckless bodily injury against a person with whom the actor has or has had a dating relationship. TEX. PENAL CODE ANN. § 25.11(a) (Supp.) (citing TEX. FAM. CODE ANN. § 71.0021(a)(1)(A); TEX. PENAL CODE ANN. § 22.01(a)(1) (Supp.)). Section 25.11(b) states:

> If the jury is the trier of fact, members of the jury are not required to agree unanimously on the specific conduct in which the defendant engaged that constituted an offense under Section 22.01(a)(1) against the person or persons described by Subsection (a), the exact date when that conduct occurred, or the county in which each instance of the conduct occurred. The jury must agree unanimously that the defendant, during a period that is 12 months or less in duration, two or more times engaged in conduct that constituted an offense [of assault] under Section 22.01(a)(1) against the person or persons described by Subsection (a).

TEX. PENAL CODE ANN. § 25.11(b) (Supp.). Cravey argues that Section 25.11(b) violates the constitutional and statutory requirements of a unanimous jury verdict in felony cases. The State argues that Cravey has failed to preserve this issue for our review.

"As a prerequisite to presenting a complaint for appellate review, the record must show that" it "was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling . . . with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context" and that either the trial court "ruled on the request, objection, or motion, either expressly or implicitly," or "refused to rule on the request, objection, or motion, and the complaining party objected to the refusal."

3

TEX. R. APP. P. 33.1(a). "Even constitutional errors may be waived by failure to object at trial." *Minter v. State*, 570 S.W.3d 941, 943 (Tex. App.—Texarkana 2019, no pet.) (quoting *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990)).

"The Texas Court of Criminal Appeals has held that a facial challenge to the constitutionality of a statute falls within those rights that can be forfeited if not preserved at trial." *Id.* at 943–44 (citing *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009)). "Likewise, the Court of Criminal Appeals has held that '[a]s applied' constitutional claims are subject to the preservation requirement and therefore must be objected to at the trial court in order to preserve error.'" *Id.* at 944 (quoting *Reynolds v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014) (citing *Flores v. State*, 245 S.W.3d 432, 437 n.14 (Tex. Crim. App. 2008); *Curry v. State*, 910 S.W.2d 490, 496 & n.2 (Tex. Crim. App. 1995)).

Because our review of the record shows that Cravey failed to raise his constitutional complaint with the trial court, we overrule Cravey's first point of error as unpreserved.

## II. Cravey Was Not Entitled to a Lesser-Included-Offense Instruction

In his second point of error, Cravey argues that the trial court erred by denying his request for the lesser-included-offense instruction of assault family violence. "Our review of whether an instruction on a lesser-included offense should be given . . . involves a two-step determination." *Shepherd v. State*, 489 S.W.3d 559, 575–76 (Tex. App.—Texarkana 2016, pet. ref'd) (citing *Cavazos v. State*, 382 S.W.3d 377, 382–83 (Tex. Crim. App. 2012); *Feldman v. State*, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002), *superseded on other grounds by statute*, TEX. CODE CRIM. PROC. ANN. art. 37.071, *as recognized by Coleman v. State*, No. AP-75,478, 2009

4

WL 4696064 (Tex. Crim. App. Dec. 9, 2009) (per curiam) (not designated for publication); *Carson v. State*, 422 S.W.3d 733, 746 (Tex. App.—Texarkana 2013, pet. ref'd)). "First, we determine whether 'the proof necessary to establish the charged offense also includes the lesser offense.'" *Id.* at 576 (quoting *Cavazos*, 382 S.W.3d at 382 (citing *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007); *Feldman*, 71 S.W.3d at 750; *Carson*, 422 S.W.3d at 746)). Here, because the statutory definition of continuous family violence is comprised of the commission of two or more incidents of family violence assault, we conclude that family violence assault is a lesser-included offense of continuous family violence. *See* TEX. PENAL CODE ANN. § 25.11(e); *see also Kemp v. State*, No. 12-18-00030-CR, 2018 WL 4767181, at *2 (Tex. App.—Tyler Oct. 3, 2018, no pet.) (mem. op., not designated for publication) (citing *Casanova v. State*, No. 13-14-00145-CR, 2016 WL 1072620, at *5 (Tex. App.—Corpus Christi Mar. 17, 2016, no pet.) (mem. op., not designated for publication)) (concluding that family violence assault is a lesser-included offense of continuous violence against the family).[1]

We next "determine 'whether there is some evidence that would permit a rational jury to find that, if the [defendant] is guilty, he is guilty only of the lesser offense.'" *Shepherd*, 489 S.W.3d at 576 (alteration in original) (quoting *Cavazos*, 382 S.W.3d at 383) (citing *Feldman*, 71 S.W.3d at 750; *Carson*, 422 S.W.3d at 746). "This second inquiry is a fact question based on the evidence admitted at trial and requires that there be some evidence that would allow a rational jury to acquit the defendant of the greater charge and convict him of the lesser-included offense."

---

[1]"Although unpublished cases have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed.'" *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

*Id.* (citing *Cavazos*, 382 S.W.3d at 383; *Feldman*, 71 S.W.3d at 750–51). "The instruction must be given if there is evidence from any source, regardless of whether it is weak, impeached, or contradicted, that raises a fact issue of whether he is guilty *only* of the lesser offense." *Id.* (alteration in original) (citing *Cavazos*, 382 S.W.3d at 383; *Carson*, 422 S.W.3d at 746). "To determine whether there is some evidence raising an issue, we consider it in the context of the entire record." *Id.* (citing *Carson*, 422 S.W.3d at 746–47; *Cavazos*, 382 S.W.3d at 384–85).

Kyle McBride, an officer with the Longview Police Department (LPD), testified that he was dispatched to the scene of a domestic disturbance on July 13, 2017, where he found the victim with a bruised and slightly swollen left eye. McBride said that Cravey had fled the scene. According to McBride, the victim, who had "grab marks" and "scratch marks," said that Cravey had "forcefully grabbed her and tried to put her into his truck." Photos of her injuries were shown to the jury.

Konrad Roberts, another LPD officer, testified that he responded to a family violence call on July 23, 2017, and observed the victim with injuries to her nose and mouth and blood on her face, chest, and shirt. Roberts said that he immediately assumed she had been assaulted and took photos of her injuries that were admitted into evidence. According to Roberts, the victim said that Cravey had knocked her down in the middle of the street and kicked her in the face after she had refused to get in his truck. Cravey had again fled the scene. The victim's daughter, who was a minor at the time of the incident, testified that the victim came home covered in blood.

Jason Hampton, an officer with the LPD, responded to "an active assault-in-progress call" on October 5, 2017. Hampton saw that Cravey was throwing objects at the victim, who

6

was "hysterical, crying," and had a swollen nose and ripped shirt. According to Hampton, the victim said Cravey had headbutted her in the nose and threw her against a wall, causing her to hit the back of her head. Hampton testified that the victim's injuries to her head, nose, left hand, and shins were consistent with her version of events and that Cravey admitted to headbutting her. Photos of those injuries were shown to the jury.

The victim testified that Cravey became "aggressive" and "scary" during an argument on July 13, 2017. She said that Cravey grabbed her throat; pushed her head into the dashboard of his truck, injuring her nose; and pulled her hair. After the victim and Cravey made up, Cravey picked her up on July 23, 2017, and bought her a beer. The victim said that the two began arguing about the July 13 incident and that Cravey grabbed her by the throat, slammed her head into the dashboard, pulled her hair, kicked her out of his truck into the road, and got out of his truck to kick her again. Despite that incident, the victim continued to date Cravey.

On October 5, 2017, after the two had moved in together, the victim said that she and Cravey got into another argument where he placed his hands on her throat and pushed her head "through the back door" with such force that her head punched a hole in it. The victim testified that she had tried to fight back but that Cravey did not stop assaulting her until police officers arrived on the scene. The victim's minor daughter was at home during the incident and testified that she heard the argument and that fights between her mother and Cravey happened frequently.

Cravey does not challenge his involvement in the October 5 incident, but he argues in his brief that there is evidence that he is guilty of only one assault because the victim "was the only witness to the assaults alleged to have occurred on July 13th and July 23rd, and her testimony

7

regarding those assaults was radically inconsistent with her initial statements to police." Cravey's argument refers to the fact that the victim, who was ashamed of her continued relationship with him, did not want her children to know that she was still dating him in July. As a result, the victim's initial statements falsely stated that she came to be in Cravey's presence fortuitously instead of voluntarily. Even so, McBride and Roberts both testified that the victim identified Cravey as the aggressor at the time of the incidents, her identification of Cravey as the aggressor at trial was not refuted by evidence, and her injuries from both July incidents were well documented and shown to the jury.

From our review of the record, we conclude that there is no evidence indicating that, if Cravey is guilty, he is guilty of only one incident of family violence assault. As a result, we find that Cravey was not entitled to the lesser-included-offense instruction. *See Casanova v. State*, No. 13-14-00145-CR, 2016 WL 1072620, at *6 (Tex. App.—Corpus Christi Mar. 17, 2016, no pet.) (mem. op., not designated for publication). We overrule Cravey's second point of error.

## III. The Trial Court Did Not Abuse Its Discretion by Overruling the Motion for Mistrial

During trial, the victim testified that she resumed her relationship with Cravey after he abused her. When asked why, she testified, "He would tell me he was changed -- he would change, he would stop doing the drugs, he would." Cravey immediately objected and, after a discussion at the bench, the trial court instructed the jury to "disregard the . . . statement by the witness." Cravey moved for a mistrial, but it was denied, and the victim's testimony resumed. On appeal, Cravey argues that the trial court abused its discretion by overruling his motion for a mistrial.

8

"A trial court's denial of a mistrial is reviewed under an abuse of discretion standard and must be upheld if within the zone of reasonable disagreement." *Hollaway v. State*, 446 S.W.3d 847, 855 (Tex. App.—Texarkana 2014, no pet.) (quoting *Brooks v. State*, 420 S.W.3d 337, 340 (Tex. App.—Texarkana 2014, no pet.) (citing *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010)).

"An instruction to disregard attempts to cure any harm or prejudice resulting from events that have already occurred." *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). "Where the prejudice is curable, an instruction eliminates the need for a mistrial, thereby conserving the resources associated with beginning the trial process anew." *Id.* "Like an instruction to disregard, a mistrial serves a corrective function. However, the class of events that require a mistrial is smaller than that for which a sustained objection or an instruction to disregard will suffice to prevent or correct the harm." *Id.* "A grant of a motion for mistrial should be reserved for those cases in which an objection could not have prevented, and an instruction to disregard could not cure, the prejudice stemming from an event at trial—i.e., where an instruction would not leave the jury in an acceptable state to continue the trial." *Id.*

"Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hollaway*, 446 S.W.3d at 855 (quoting *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007) (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004))). "In other words, we must determine whether the given instruction to disregard could not cure the prejudice from the State's improper question." *Id.* Among other things, we consider the nature of the error, the persistence of the prosecution in committing the error, the flagrancy of the

9

violation, the instruction given by the trial court, and the weight of the incriminating evidence. *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988).

In this case, the victim's testimony was not a direct response to the State's question, and the reference to Cravey's drug use had little, if any, material relevance to the charged offense. The trial court instructed the jury that it was to disregard the evidence, and we presume that the jury followed this instruction. *See Hollaway*, 446 S.W.3d at 856 (citing *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); *Sharper v. State*, 22 S.W.3d 557, 558–59 (Tex. App.—Texarkana 2000, no pet.)); *see also Hinojosa v. State*, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999). The State did not refer to Cravey's drug use in any way during the remainder of trial or its closing argument. Cravey does not argue that the State failed to present sufficient evidence to support Cravey's conviction, which was supported by the evidence recited above.

Considering the totality of the circumstances, the trial court could have reasonably concluded that the victim's blurted-out, nonresponsive remark about drug use was not so inflammatory as to be incurable by an instruction to disregard. As a result, we find no abuse of discretion in the trial court's denial of Cravey's motion for a mistrial. We overrule Cravey's third point of error.

## IV. Cravey's Appellate Complaint About the Limitation of Cross-Examination Does Not Comport with the Argument at Trial

During cross-examination, the victim testified that she consumed alcohol and had only been in trouble for driving while intoxicated. The record next revealed an unrecorded conference at the bench during which the trial court purportedly ruled to limit the scope of Cravey's cross-examination of the victim. Cravey submitted a bill review stating that, had he

been permitted to do so, he would have questioned the victim about her methamphetamine use, which had resulted in a revocation of her community supervision, in addition to her alcohol use. Cravey also wanted to admit evidence that the victim (1) was convicted of aggravated assault with a deadly weapon in 1999, (2) was convicted of family violence assault for beating her ex-husband in 2001, (3) was convicted of criminal mischief for hitting his car, (4) assaulted a hotel clerk in 2014 as a result of her intoxication, (5) admitted to a peace officer that she had road rage, and (6) made several comments on Facebook showing that she was "okay with domestic violence and disturbing the peace and aggravated assault with a deadly weapon." At trial, Cravey argued that he wished to admit this evidence solely "to show her character for propensity for violence and conformity with that character."[2]

For the first time on appeal, Cravey argues that he should have been allowed to admit the evidence to impeach the victim's character for truthfulness and to correct the impression left by the victim that she was nonviolent. The State contends that this argument is waived, and we agree. A "point of error on appeal must comport with the objection [or argument] made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see Swain v. State*, 181 S.W.3d 359, 368 (Tex. Crim. App. 2005). "[A] complaint is not preserved for appeal unless it was made to the trial court 'by a timely request . . .' that 'stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." *Resendez v. State*, 306 S.W.3d 308 (Tex. Crim. App. 2009) (quoting TEX. R. APP. P. 33.1(a)(1)(A)). The

---

[2]Cravey does not raise or brief this argument on appeal.

11

party must "let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Id.* at 313 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

Because the arguments made in Cravey's brief do not comport with the ones he raised at trial, he has failed to preserve his complaint that the evidence should have been admitted to impeach the victim's character for truthfulness or to correct any impression of her nonviolence. As a result, we overrule Cravey's fourth point of error.

## V.      While the Crime Stoppers Fee Was Proper, the Sheriff Fees Should Be $75.00, and the Time Payment Fee Should Be Deleted

The clerk's bill of cost includes a $50.00 Crime Stoppers fee, $225.00 in sheriff fees, and a $15.00 time payment fee. On appeal, Cravey argues that the Crime Stopper fee is already included in the consolidated court costs, but the State argues that the fee is separately authorized as an additional condition of community supervision. Cravey also argues that the record only supports sheriff fees of $75.00 and that the time payment fee must be deleted, and the State concedes both issues.

Section 133.102 of the Texas Local Government Code sets the rate for consolidated court costs and allocates a percentage to the "crime stoppers assistance account" and "compensation to victims of crime account." TEX. LOC. GOV'T CODE ANN. § 133.102(e)(1), (8). As a result, Cravey argues that the inclusion of a separate Crime Stopper fee is duplicative and should be removed. Here, the Crime Stopper fee was specifically included in the terms and conditions of Cravey's community supervision. Conditions of community supervision may require a

12

defendant to "pay a fine in an amount not to exceed $50 to a crime stoppers organization." TEX. CODE CRIM. PROC. ANN. art. 42A.301(b)(19) (Supp.). Because the separate assessment of the Crime Stopper fee is a fine authorized as a condition of Cravey's community supervision, we overrule this issue. *See Deese v. State*, No. 11-20-00056-CR, 2021 WL 2964517, at *1 (Tex. App.—Eastland July 15, 2021, no pet.) (per curiam) (mem. op., not designated for publication).[3]

Even so, we sustain Cravey's arguments about the sheriff fees and time payment fee. "We have the authority to modify the judgment to make the record speak the truth." *Minter v. State*, 570 S.W.3d 941, 944 (Tex. App.—Texarkana 2019, no pet.) (citing TEX. R. APP. P. 3.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.)). As the State concedes, the record only supports sheriff fees of $75.00. As a result, we modify the bill of costs and judgment accordingly.

Next, the time payment fee must be deleted. The Texas Court of Criminal Appeals has recently concluded that a time payment fee like the one imposed here "must indeed be struck for being prematurely assessed because a defendant's appeal suspends the duty to pay court costs and therefore suspends the running of the clock for the purposes of the time payment fee." *Dulin v. State*, 620 S.W.3d 129, 129 (Tex. Crim. App. 2021). "As a consequence, even now, assessment of the time payment fee in this case would be premature because appellate proceedings are still pending." *Id.* Pursuant to *Dulin*, we strike the time payment fee "in [its] entirety, without prejudice to [it] being assessed later if, more than 30 days after the issuance of

---

[3]*See supra* note 1.

13

the appellate mandate, the defendant has failed to completely pay any fine, court costs, or restitution" owed. *Id.* at 133.

## VI.    Conclusion

We modify the bill of costs and judgment by reducing the sheriff fees from $225.00 to $75.00 and by deleting the imposition of a time payment fee.  As modified, we affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:    October 11, 2021
Date Decided:    November 12, 2021

Do Not Publish

14