

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-21-00131-CR

JESUS EDUARDO PEREZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court
Lamar County, Texas
Trial Court No. C-11693

Before Morriss, C.J., Stevens and van Cleef, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

Jesus Eduardo Perez appeals a judgment of the County Court of Lamar County that awarded a twenty-foot, gooseneck, flatbed trailer to the North Texas Auto Theft Task Force for official purposes, pursuant to Article 47.01a(b)(1) of the Texas Code of Criminal Procedure.[1] In his pro se appeal, Perez asserts that (1) the trailer was unreasonably seized in violation of his Fourth Amendment rights, (2) there was an inadequate basis for the initial seizure of the trailer, (3) there was an inadequate investigation, and (4) since a notice of hearing in the justice court cited Article 47.01(a), that provision should control. Because we find that (1) Perez's Fourth Amendment complaint was not preserved, (2) there was an adequate basis for the initial seizure, (3) Perez's complaint regarding the investigation is without merit, and (4) any error or irregularity in the justice court is moot, we will affirm the trial court's judgment.

## I.     Background

After Perez purchased the trailer from an individual in the State of Oklahoma, he took it to the task force for an inspection[2] in order to register it in Texas. While inspecting the trailer, Detective David Rowton saw signs that led him to believe that the trailer had been stolen or that the serial number had been removed, altered, or obliterated. Rowton testified that somebody had scraped and painted the gooseneck[3] of the trailer and the gusset,[4] while the rest of the trailer had

---

[1]*See* TEX. CODE CRIM. PROC. ANN. art. 47.01a(b)(1).

[2]*See* TEX. TRANSP. CODE ANN. § 501.032 (requiring, in some circumstances, an identification number inspection for a motor vehicle, trailer, or semitrailer).

[3]Rowton described the gooseneck as the large support that ties to the vehicle.

[4]Rowton identified the gusset as the triangle portion of the gooseneck.

2

been untouched. He explained that the gusset is a location where a manufacturer will adhere its identification numbers. He opined that the alteration indicated that there had been tampering to hide the identity of the trailer and that the trailer may have been stolen.

When Rowton wiped away dust and oxidation from the gooseneck, he noticed pinstriping, and he explained that some manufacturers place unique pinstriping on their trailers. The State introduced photographs that showed the detail of the pinstriping. Rowton also applied paint remover to the gusset and removed paint, which revealed a partial foil sticker. He explained that a common way for manufacturers to place a serial number on their trailers is with a Mylar or foil sticker or a riveted metal plate. He also acknowledged that a foil sticker could have been an assigned number from a different state. Rowton found another location on the trailer where another sticker had been applied at some point that was the same shape and size as a state inspection sticker. He testified that the top support of the gooseneck, which had been scraped and painted over, is typically where a manufacturer will put its name. Although Perez had an Arkansas title with a vehicle identification number (VIN), he could not match it to the trailer.

Based on his inspection, Rowton determined that the trailer was manufactured,[5] believed there was probable cause to believe that the VIN had been intentionally altered to conceal its identity, and concluded that the trailer was stolen property. At point, he seized the trailer under Section 501.158 of the Texas Transportation Code.

---

[5]The Arkansas title produced by Perez listed the trailer associated with that title as homemade.

3

After seizing the trailer, Rowton continued his investigation. He searched, without success, for a manufacturer's confidential VIN. He contacted a retired investigator who identified the trailer as manufactured by Tex-Nex, based on the pinstriping. Rowton also found a sticker on an axle that indicated that it had been shipped in 2004, but the shipper did not keep records from that far back. He testified that manufacturers do not typically manufacture the axle before a trailer is built.

Rowton also talked with Perez, the person from whom Perez said he bought the trailer, and the person identified as the one who built it. Joshua Posey, identified as the builder, said that he did not build it, that he only placed boards on it, and that he bought the trailer from an elderly man who had the trailer in a pasture. Rowton testified that the person from whom Perez bought the trailer said he had bought from a person named Brian, who gave him an Arkansas title that he gave to Perez. This person told Rowton that he never noticed alterations to the trailer.

Perez offered into evidence certified copies of documents from the Arkansas Department of Finance and Administration that showed the registration of a trailer in Arkansas. Those documents showed that a "homemade or other trailer of a type which was built without a manufacturer's" VIN was registered to Joshua Posey of Mena, Arkansas, on November 7, 2008, with an issued VIN of ARKAVTL0180438299 and a title number of 66030820215. The documents also showed that a duplicate title was issued to Posey for a homemade trailer with the same VIN on June 21, 2019, with a title number of 761010143053 and a previous title number of 57011206268.

4

Although Perez told Rowton that it was an Arkansas-made trailer with an Arkansas title, Rowton pointed out to Perez that the trailer did not match the Arkansas title. Rowton testified that, even if Arkansas had applied a VIN to the trailer, it had been removed or obliterated. He testified that he has seen the kinds of stickers that Arkansas uses when it assigns a VIN, which are small foil stickers, and that he found a small piece of a foil sticker on the trailer. He also testified that the photographs showing the pinstriping on a Tex-Nex trailer had been identified as an exact match with the pinstriping on the trailer in question. Rowton also acknowledged that some manufacturers may sell unfinished trailers but maintained that those are still manufactured trailers.

Perez testified that he bought the trailer from a man in Oklahoma, who bought it from Brian, who bought it from the man who bought it from a farmer in Arkansas. He believed that the entire trailer had been painted when he bought it. He maintained that Rowton had scraped the sticker off during his inspection. He testified that there was at least part of a sticker on the trailer that Rowton scraped off. Perez also maintained that it took Posey a year to one and one-half years to finish the trailer.

He also testified that he contacted the prior owner of Tex-Nex, who told him that they put nine-to-thirteen-digit serial numbers on their trailers, and he informed him where Tex-Nex put those numbers. Perez said that he looked at that place on the trailer and that the number was not there. When he told this to the owner, he found out that not all of Tex-Nex's trailers had serial numbers and that Tex-Nex had sold unfinished trailers in Arkansas. Perez also testified that he

5

talked to Posey who said that he told Rowton that he had bought an unfinished trailer and finished it.

After brief closing arguments, the trial court entered its judgment that the trailer be awarded to the task force for official purposes, pursuant to Article 47.01a(b)(1) of the Texas Code of Criminal Procedure.

## II.  Applicable Law

As applicable to this case, Section 501.158 of the Texas Transportation Code authorizes a peace officer to "seize a vehicle . . . without a warrant if the officer has probable cause to believe that the vehicle . . . is stolen." TEX. TRANSP. CODE ANN. § 501.158(a)(1). When a vehicle is seized under Section 501.158, it is "treated as stolen property for the purposes of custody and disposition of the vehicle." TEX. TRANSP. CODE ANN. § 501.158(b); *see City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 234 (Tex. 2011).

When, as in this case, no criminal action is pending relating to the seized vehicle, the disposition of the vehicle is determined by a hearing pursuant to Article 47.01a of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 47.01a. Under Article 47.01a, a court with jurisdiction as a magistrate in the county where the property is held "may hold a hearing to determine the right of possession of the property." TEX. CODE CRIM. PROC. ANN. art. 47.01a(a). At the hearing "any interested person may present evidence showing that the property was not acquired by theft or another offense or that the person is entitled to possess the property." TEX. CODE CRIM. PROC. ANN. art. 47.01a(c).

6

However, if the evidence at the hearing shows that (1) "probable cause exists to believe that the property was acquired by theft or by another manner that makes its acquisition an offense and" (2) "the identity of the actual owner of the property cannot be determined," the court is required to order the officer to: "(1) deliver the property to a government agency for official purposes; (2) deliver the property to a person authorized by Article 18.17 of [the Code of Criminal Procedure] to receive and dispose of the property; or (3) destroy the property." TEX. CODE CRIM. PROC. ANN. art. 47.01a(b).

When a hearing is before the trial court, the trial court is the fact-finder. As fact-finder, it is "the sole judge of the credibility of the witnesses and the weight to be given their testimony and may 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014)). "We give 'almost complete deference to a [fact-finder]'s decision when that decision is based upon an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)).

## III. Analysis

### A. Perez's Fourth Amendment Complaint Was Not Preserved

In his brief, Perez asserts that his rights under the Fourth Amendment[6] were violated when the trailer was unreasonably seized. It is unclear whether Perez is asserting that the trailer was unreasonably seized when Rowton seized it at the inspection, or whether he is asserting that

---

[6]*See* U. S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .").

7

it was unreasonably seized at the disposition hearing.  In either scenario, however, Perez has not preserved this issue for our review.

"Preservation of error is a systemic requirement on appeal." *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009) (citing *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005)).  We should not address the merits of an issue that has not been preserved for appeal. *Id.* "[A] court of appeals should review preservation of error on its own motion," even if no party has raised the issue. *Id.* at 532–33.

To preserve an issue for appellate review, "a party must make a timely objection to the trial court or make some request or motion apprising the trial court of the party's specific complaint and obtain a ruling, or refusal to rule, on the objection or motion from the trial court." *Minter v. State*, 570 S.W.3d 941, 943 (Tex. App.—Texarkana 2019, no pet.) (citing TEX. R. APP. P. 33.1(a)).  "Almost all error—even constitutional error—may be forfeited if the appellant fails to object." *Proenza v. State*, 541 S.W.3d 786, 808 (Tex. Crim. App. 2017) (citing *Fuller v. State*, 253 S.W.3d 220, 232 & n.48 (Tex. Crim. App. 2008)).  The preservation requirement applies to challenges asserted under the Fourth Amendment. *See Butler v. State*, 300 S.W.3d 474, 480–81 (Tex. App.—Texarkana 2009, pet. ref'd).  Because Perez did not assert this complaint in the trial court, he has not preserved this issue for our review.  We overrule this issue.

## B.    There Was a Sufficient Basis for the Initial Seizure

Perez also complains that there was an insufficient basis for the initial seizure of the trailer.  He asserts that, when the trailer was initially seized, Rowton indicated that it was seized

due to Section 31.11 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 31.11.[7] Yet, he argues, he was not charged with this offense.

Perez cites to no testimony or evidence in the record, and we find none, that supports his complaint that Rowton ever maintained that he seized the trailer under Section 31.11 of the Texas Penal Code. Rather, Rowton testified that he seized the trailer pursuant to Section 501.158 of the Texas Transportation Code.

Even if we construe Perez's argument to be that there was an insufficient basis to seize the trailer pursuant to Section 501.158, we find that Rowton had sufficient cause to do so. Under that statute, Rowton was authorized to seize the trailer if he had "probable cause to believe" it was stolen. TEX. TRANSP. CODE ANN. § 501.158(a)(1). Rowton testified that, when he initially inspected the trailer, he saw signs that it may have been stolen. The gooseneck and the gusset of the gooseneck, where a manufacturer would typically put its name and unique pinstriping and attach a VIN with a Mylar, foil, or metal tag, had been recently scraped and painted. He noted that the rest of the trailer had not been painted recently. Further, even though Rowton determined from his inspection of the trailer that it had been manufactured and did not have a VIN, the Arkansas title that Perez gave him indicated that the trailer associated with that title was homemade and had a VIN.

Based on this evidence, we find that Rowton had probable cause to believe[8] that the trailer was stolen and to take possession of it under Section 501.158. For that reason, we find

---

[7]Section 31.11 provides that it is a class A misdemeanor to knowingly or intentionally remove, alter, or obliterate a serial number or other permanent identification marking on tangible property, or to possess, sell, or offer for sale tangible personal property that the person knows or should know that the serial number or other permanent identification marking has been removed, altered, or obliterated. TEX. PENAL CODE ANN. § 31.11(a), (d).

that Rowton had a sufficient basis to seize the trailer pursuant to Section 501.158 of the Texas Transportation Code.[9] We overrule this issue.

### C. Perez's Complaint Regarding the Investigation is Without Merit

Perez also complains that Rowton did not perform an adequate investigation. He complains that Rowton did not locate the previous owners and makers of the trailer, that he did not contact the State of Arkansas to determine its procedures for issuing VINs, and that any hidden VIN was not matched with a theft report.

Initially, we note that Rowton testified that he contacted the previous owners identified by Perez, including both the person from whom Perez purchased the trailer and Posey, to whom an Arkansas title was issued. This complaint is without merit.

Further, Perez's complaint regarding Rowton not contacting the State of Arkansas assumes that the trailer is the same trailer for which Posey was issued an Arkansas title. However, Rowton's investigation after seizing the trailer, including the discovery of a partial foil tag where a manufacturer would typically place a VIN and the distinctive pinstriping that matched the pinstriping used by Tex-Nex, led him to conclude that the trailer was manufactured. Yet the Arkansas title issued to Posey indicated that the trailer associated with that title was homemade and that it had been issued a VIN. Because the trailer was manufactured and had no

---

[8]The Texas Supreme Court has stated that "Texas law permits a police officer to seize, without a warrant, vehicles that reasonably appear to have been stolen." *VSC, LLC*, 347 S.W.3d at 234 (citing TEX. TRANSP. CODE ANN. § 501.158(a)).

[9]Perez also wonders why he was not charged, ticketed, or fined if Rowton believed that he had violated the Texas Penal Code. However, neither Section 501.158 of the Texas Transportation Code nor Article 47.01a of the Texas Code of Criminal Procedure requires that anyone be charged with a crime in order to seize or dispose of a vehicle when there is probable cause to believe it is stolen. *See* TEX. TRANSP. CODE ANN. § 501.158; TEX. CODE CRIM. PROC. ANN. art. 47.01a(b).

10

VIN, the evidence did not show that the trailer was the same trailer for which Posey was issued the Arkansas title. Perez does not explain, and we fail to see, how Rowton contacting the State of Arkansas to determine its procedure for issuing VIN's would have changed these facts.

Finally, since the evidence did not show that there was a hidden VIN and did show that any VIN had been removed or obliterated, it would have been impossible to match the unknown VIN to any theft report. Because Perez's complaints about Rowton's investigation are without merit, we overrule this issue.

### D. Any Error or Irregularity in the Justice Court is Moot

Perez also asserts that, because a notice of hearing in the justice court cited Article 47.01(a) of the Texas Code of Criminal Procedure,[10] the trailer should never have been seized. He reasons that, since no other party contested his rights to the trailer, it should not have been seized.

This case was originally brought in the Lamar County Justice Court, Precinct 5, Place 2. The notice of the hearing to determine the right of possession to the trailer stated that the hearing was pursuant to Article 47.01(a), rather than Article 47.01a, as did the order of possession entered by the justice court.[11] However, Perez appealed the justice court's judgment to the County Court of Lamar County. The Texas Rules of Civil Procedure provide that, when an action has been appealed from the justice court to the county court, "[t]he case must be tried de

---

[10]*See* TEX. CODE CRIM. PROC. ANN. art. 47.01(a) (providing that "an officer who comes into custody of property alleged to have been stolen shall hold it subject to the order of the proper court only if the ownership of the property is contested or disputed").

[11]This appears to be a clerical error since the justice court awarded possession to the task force, which it could do under Article 47.01a but not under Article 47.01(a).

novo in the county court. A trial de novo is a new trial in which the entire case is presented as if there had been no previous trial." TEX. R. CIV. P. 506.3.[12] The effect of having a new trial "as if there had been no previous trial" is that any non-jurisdictional error or irregularity in the justice court becomes a nullity, and any challenge based on such error or irregularity is moot. *See Maldonado v. Margo Props., LLC*, No. 13-15-00500-CV, 2016 WL 4578406, at *1–2 (Tex. App.—Corpus Christi Sept. 1, 2016, pet. dism'd. w.o.j.) (mem. op.). For that reason, we overrule this issue.

## IV. Disposition

For the reasons stated, we affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:      July 18, 2022
Date Decided:        August 18, 2022

Do Not Publish

---

[12]The Texas Code of Criminal Procedure states,

> Appeals from a hearing in a . . . justice court under Article 47.01a of this code shall be heard by a county court or statutory county court. The appeal is governed by the applicable rules of procedure for appeals for civil cases in justice courts to a county court or statutory county court.

TEX. CODE CRIM. PROC. ANN. art. 47.12(b).