

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00069-CR

_____

JACKIE WEBSTER DENNIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR19-337

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

A Rusk County jury convicted Jackie Webster Dennis of dating violence assault by occlusion with a previous conviction for family violence, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b-3) (Supp.). After Dennis pled true to the State's punishment enhancement paragraphs, the jury assessed a sentence of fifty years' imprisonment. The trial court imposed the fifty-year sentence and assessed $450.00 in attorney fees for Dennis's court-appointed counsel. On appeal, Dennis argues that the evidence is legally insufficient to support the jury's verdict of guilt.

Because we find that sufficient evidence supported the jury's verdict, we overrule Dennis's sole point of error. Even so, we modify the trial court's judgment to reflect the proper statute of offense and by deleting the assessment of court-appointed attorney fees against Dennis, who is indigent. As modified, we affirm the trial court's judgment.

## I. Legally Sufficient Evidence Supports the Jury's Verdict of Guilt

### A. Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323

2

S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

Here, the State alleged that Dennis

intentionally, knowingly, and recklessly cause[d] bodily injury to Victoria Hurtado . . . , a person with whom the defendant has or had had a dating relationship, as described by Section 71.0021(b) of the Texas Family Code, by intentionally, knowingly, and recklessly impeding the normal breathing or circulation of the blood of the complainant by applying pressure to the throat or neck of the complainant, and before the commission of the offense, the defendant had previously been convicted of an offense under Chapter 22 of the Texas Penal Code, against a member of the defendant's family, as described by Section 71.003 of the Texas Family Code, namely on the 24th day of January, 2011, in the Gregg County Court at Law of Gregg County, Texas, in cause number 2006-3485.

The language of this indictment tracks the language found in Section 22.01(b-3) of the Texas Penal Code, which states, in relevant part, the following:

3

(a)      A person commits an offense if the person:

      (1)     intentionally, knowingly, or recklessly causes bodily injury to another . . . .

. . . .

(b-3)   . . . an offense under Subsection (a)(1) is a felony of the second degree if:

      (1)     the offense is committed against a person whose relationship to or association with the defendant is described by Section 71.0021(b) . . . ;

      (2)     it is shown on the trial of the offense that the defendant has been previously convicted of an offense under this chapter . . . against a person whose relationship to or association with the defendant is described by Section . . . 71.003 . . . Family Code; and

      (3)     the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth.

TEX. PENAL CODE ANN. § 22.01(a)(1), (b-3) (Supp.).

## B.    The Evidence at Trial

Denise Padilla lived in a home shared with Victoria Hurtado. Padilla testified that Hurtado was dating Dennis and that, on the day of the incident, Dennis and Hurtado were arguing. When Padilla described the commotion heard coming from Hurtado's room, she said it sounded "[l]ike wresting around." Padilla testified that she opened the door, saw Hurtado crying, and witnessed Dennis with his hands around Hurtado's neck.[1] Padilla said that Hurtado had marks on her neck, a busted lip, and tousled hair and that she "looked like she had been tossed around like a rag doll." Padilla called the police.

---

[1]During cross-examination, Padilla said that Dennis's hands were below Hurtado's neck in the "collarbone area."

4

Body-camera footage from the responding officer showed that, when he arrived at Padilla's home, Hurtado told the officer that her boyfriend, Dennis, "pick[ed] [her] up by [her] neck and was choking [her] on the bed," threw her to the floor, and then "stomped" on her neck with his boot. Hurtado said that she tried to scream but could not because she was unable to breathe.

Patrick Dooley, a deputy with the Rusk County Sheriff's Office, authenticated a jailhouse call between Dennis and Hurtado on the day of voir dire. On the call, Dennis attempted to convince Hurtado not to appear for trial, but he was unable to sway her.

After confirming that she and Dennis had been dating for approximately one year before the incident, Hurtado testified that Dennis choked her with his hands, which caused difficulty breathing. She said, "After [Dennis] choked me, he put his foot on me." Hurtado added, "I was trying to get him off of me because he was choking me out." A closeup of Hurtado's injuries, including marks on her neck and collarbone, were shown to the jury. Hurtado said that she was bruised for a week.

The State introduced a certified judgment showing that Dennis had pled guilty to, and was previously convicted of, family violence assault on January 24, 2011, in the County Court at Law #1 of Gregg County, Texas, in cause number 2006-3485. Craig Allen Sweeney, an investigator with the Rusk County District Attorney's Office, testified that fingerprint analysis showed that Dennis's thumbprint was on the prior judgment.

After hearing this evidence, the jury rendered a verdict of guilt.

## C. Analysis

Dennis acknowledged the proof of his prior offense for family violence and that the State proved he caused bodily injury to Hurtado with the requisite intent. Even so, he argues that there was insufficient evidence to establish that he impeded Hurtado's normal breathing or circulation by applying pressure to her neck. We disagree.

The Texas Court of Criminal Appeals has interpreted the term "'impeding'. . . to include any degree of impediment to one's normal breathing or circulation of blood flow." *Philmon v. State*, 609 S.W.3d 532, 537 (Tex. Crim. App. 2020). As a result, "evidence of the complainant simply being unable to take deep breaths" will support the jury's finding on the occlusion element. *Id.* "This is an exceptionally low bar," since "[i]t takes very little effort or force to slightly hinder another's breathing or circulation, and there is notably no injury or threat of injury requirement aside from the impediment, however minimal." *Id.*

Here, Padilla witnessed Dennis with his hands around Hurtado's neck. The audio from body camera footage showed that Hurtado told officers that Dennis picked her up by her neck and choked her and later "stomped" on her neck area with his boot. The jury was shown photographs of the injuries to Hurtado's neck and heard Hurtado's testimony that she was bruised for a week. By this evidence, the jury could see that Dennis had applied some force or pressure to Hurtado's neck. The jury was also able to conclude that Dennis impeded Hurtado's normal breathing when she testified that Dennis was "choking [her] out" and said that it was difficult for her to breathe. The body camera footage revealed that Hurtado told the responding officer that she tried to scream but was unable to do so because she could not breathe.

6

When viewed in the light most favorable to the verdict, we conclude that a rational juror could reasonably infer from the evidence that all essential elements of the offense were met, including that Dennis impeded Hurtado's normal breathing by applying pressure to her neck.

## II.    We Must Modify the Trial Court's Judgment

### A.    We Correct the Statute of Offense

The trial court's judgment correctly states that Dennis was convicted of family violence assault by occlusion with a prior conviction for family violence assault. Under Section 22.01(b-3) of the Texas Penal Code, this offense is classified as a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b-3). While the judgment properly reflects conviction of a second-degree felony, it mistakenly states that the statute of offense is Section 22.01(b-2), which does not apply since it relates to assaults against peace officers or judges. *See* TEX. PENAL CODE ANN. § 22.01(b-2) (Supp.).

"We have the authority to modify the judgment to make the record speak the truth." *Minter v. State*, 570 S.W.3d 941, 944 (Tex. App.—Texarkana 2019, no pet.) (citing TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.)). Accordingly, we modify the trial court's judgment to reflect that the proper statute of offense is Section 22.01(b-3).

### B.    We Delete the Assessment of Attorney Fees Because Dennis Is Indigent

Because the trial court found Dennis indigent, he was presumed to remain indigent absent proof of a material change in his circumstances. *See* TEX. CODE CRIM. PROC. ANN. arts. 26.04(p), 26.05(g) (Supp.); *Walker v. State*, 557 S.W.3d 678, 689 (Tex. App.—Texarkana 2018,

7

pet. ref'd). Even so, the trial court, who also found Dennis indigent after trial for purposes of appeal, assessed $450.00 in attorney fees against him.

Under Article 26.05(g) of the Texas Code of Criminal Procedure, a trial court has the authority to order the reimbursement of court-appointed attorney fees only if "the judge determines that a defendant has financial resources that enable the defendant to offset in part or in whole the costs of the legal services provided . . . , including any expenses and costs." TEX. CODE CRIM. PROC. ANN. art. 26.05(g). "[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees" of legal services provided. *Armstrong v. State*, 340 S.W.3d 759, 765–66 (Tex. Crim. App. 2011) (quoting *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010)). A finding under Article 26.05(g) must be supported by sufficient evidence. *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010).

We have scoured the appellate record and conclude that nothing showed that Dennis had the ability to pay attorney fees. Here, the trial court's judgment recited that Dennis was indigent; however, the trial court nevertheless assessed attorney fees against him.[2] We delete the assessment of attorney fees from the judgment.

---

[2]The bill of costs correctly shows that nothing is owed for attorney fees because Dennis is indigent.

## III. Conclusion

We modify the trial court's judgment (1) to reflect that the proper statute of offense is Section 22.01(b-3) and (2) by deleting the $450.00 assessment for court-appointed attorney fees. As modified, we affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     January 19, 2023
Date Decided:       January 31, 2023

Do Not Publish

9